| | | |
|---|---|---|
| ANTHONY GORDON MATHIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TERRA RENEWAL SERVICES, INC., and | ) | |
| DARLING INGREDIENTS, INC., | ) | |
| | ) | |
| Defendants/ | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LJC ENVIRONMENTAL, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on the following: (1) Defendants Terra Renewal Services, Inc.'s ("Terra") and Darling Ingredients, Inc.'s ("Darling") (collectively, "Defendants") Motion for Summary Judgment as to Plaintiffs' Claims, (Doc. Nos. 41–42, 56–57); (2) Plaintiff Anthony Gordon Mathis' ("Mathis") Response in Opposition to Defendants' Motion for Summary Judgment as to Plaintiffs' Claims, (Doc. Nos. 52–53); (3) Defendants' Motion for Summary Judgment against Third-Party Defendant LJC Environmental, LLC ("LJC"), (Doc. Nos. 43–44, 54); (4) Third-Party Defendant LJC's Response in Opposition to the Motion for Summary Judgment against LJC, (Doc. No. 49); (5) Third-Party Defendant LJC's Motion for Partial Summary Judgment, (Doc. Nos. 46–48); (6) Defendants' Response to LJC;s

1

Motion for Partial Summary Judgment, (Doc. No. 50); (7) Defendants' Motion to Trifurcate Trial, (Doc. Nos. 58–59, 61); and (8) Plaintiff's Response in Opposition to Defendants' Motion to Trifurcate Trial, (Doc. No. 60). The motions have been fully briefed and the issues are ripe for adjudication.

## I. BACKGROUND

### A. Procedural History

Plaintiff Anthony Gordon Mathis filed a Complaint in this Court against Defendants Terra Renewal Services, Inc. ("Terra") and Darling Ingredients, Inc. ("Darling") on March 10, 2019. (Doc. No. 1).[1] Defendants filed a Reply and a Third-Party Complaint against LJC Environmental, LLC ("LJC") on July 2, 2019 (Doc. No. 15).

Following discovery the parties filed several cross-motions for summary judgment. Defendants Terra and Darling filed a motion for summary judgment on Plaintiff's claims on March 12, 2021. (Docs. Nos. 41, 42; see also 52, 53, 57). On the same day, Defendants also filed for summary judgment on their Third-Party Complaint against LJC. (Docs. Nos. 43, 44; see also 49, 54). LJC filed a motion for partial summary judgment on the same day as well, seeking summary judgment on the indemnity claim by Defendant Darling in particular. (Docs. Nos. 46, 47). In response, Defendants agreed that Darling was not a party to the Subcontractor Services Agreement and noted that they only seek Summary Judgment on

---

[1] The Complaint included claims for: (1) Negligence, Gross Negligence, and Willful & Wanton Conduct, (2) Breach of Warranty, (3) Piercing the Corporate Veil – Alter Ego, (4) Joint Ventures, and (5) Punitive Damages. (Doc. No. 1).

2

indemnification as to Defendant Terra.  (Doc. No. 50).

Defendants filed a motion to trifurcate the trial on May 14, 2021.  This Court then held a hearing on May 27, 2021 at which the Court heard from all parties about their respective dispositive motions.

### B.  Factual Summary

In the light most favorable to the non-moving party: Plaintiff is a former truck driver who was employed by Third-Party Defendant LJC during the events in question.  Defendant Terra, acting on behalf of itself and Defendant Darling, entered into the Subcontractor Services Agreement (the "Agreement") in May 2015 with LJC for the transportation of industrial residuals.  (Doc. No. 15-1).  Under the terms of the Agreement, LJC would provide transport industrial residuals from and to customer locations on Terra's behalf, along with additional related services, while Terra would provide specific equipment including vacuum tanker trailers for the work.  (Doc. No. 15-1 Ex. A at 1).  The Agreement required that any equipment Terra supplied be "in good condition and in good working order," while LJC assumed responsibility for work performance safety and for ensuring that its employees observed and abided by all safety regulations and laws.  (Doc. No. 15-1 at 3–4).  The Agreement also provided that, upon LJC's written request, Terra would be required to provide training for any such equipment.  (Doc. No. 15-1 at 4).  Finally, the Agreement contained an indemnity provision.[2]

_____

[2] The provision in question reads: "Each party shall save and hold the other party harmless from and against all suits or claims that may be based upon any alleged injury to or death of any persons or damage to property that may occur, or that may

3

On March 10, 2017, Plaintiff – on behalf of LJC – was to pick up and transport industrial residuals from Hunter Farms LLC in High Point, North Carolina. Defendant Terra owned the vacuum tanker trailer, Tanker 11500, provided by Defendants for the job. (Doc. No. 42-1). The tanker was certified to meet a 3 p.s.i. minimum working pressure. (Doc. No. 53-18 at 11).[3] The tanker was no longer being used to transport hazardous materials by the time of the accident. (Doc. No. 42-3 at 51; Doc. No. 42-6 at 35; Doc. No. 42-15 at 28; Doc. No. 42-16 at 3). The tanker in question was equipped with an adjustable pressure relief valve ("PRV") that could be set from 7 p.s.i. to 21 p.s.i., although on subsequent testing the PRV in fact opened between 25 and 27 p.s.i. (Doc. No. 42-14 at 10–11; Doc. No. 42-15 at 14). Reggie Porter, a driver, testified in his deposition that both LJC and Defendant Terra had been informed that the tanker could "hold[] pressure." (Doc. No. 42-17 at 7–9, 46). Porter also stated that when he informed James Powell (employee of Terra) of this fact in front of Terra employees, Powell replied that the tanker would need to be "looked at" as a result of this information. (Doc. No. 42-17 at 10, 22). Among other issues, the tanker's cannister and pressure relief valve were not working on the day of the accident. (Doc. No. 53-2 at 55).

---

be alleged to have occurred, in the course of the performance of this Agreement or in management of the services to any TRS customer, made by any person, to the extent that such alleged injury to or death of any persons or damage to property is determined by a court of competent jurisdiction to have been caused in whole or in part by the willful misconduct, negligent acts or omissions of indemnifying party, its agents or employees. The indemnity obligations set forth in this paragraph shall survive the termination of this Agreement." (Doc. No. 15-1 at 1).
[3] Defendants' expert cites instead a working pressure of 25 p.s.i. and a 40 p.s.i. test pressure consistent with the original design of the tanker. (Doc. No. 42-14 at 11).

LJC's Standard Operating Procedure ("SOP") required its drivers to, among other things, "Make Sure Trailer is Properly Vented through Canister or Top Hatch Open," and also told drivers to "Always Have Top Man Hole Cover 'HATCH' . . . Open during Loading to Prevent Vapor Lock." (Doc. No. 42-18). Plaintiff signed a form acknowledging that he had read and received the SOP by at least July 2016. (Doc. No. 42-6 at 30; Doc. No. 42-19).

On March 10, 2017, Plaintiff first loaded the vacuum tanker trailer in question at a chicken plant in Wilkesboro, North Carolina, with industrial residuals through the center manway on top of the trailer. (Doc. No. 42-6 at 7–9). Plaintiff then drove the tanker to a farm site to unload the trailer. (Pl. Dep. 56:19 to 57:25, 83:7-25). After unloading at the farm site, Plaintiff drove to the eventual accident site at Hunter Farms, a dairy operation in High Point, North Carolina. (Doc. No. 42-20). There Plaintiff removed the end cap from the vent hose and began loading. (Doc. No. 42-22). Plaintiff did not open the manway lids on the tanker before beginning to load the tanker. (Young Dep. 24:9-16, 113:11-14; Plaintiff Dep. 112:20–113:5, 121:1–122:11, 226:2-25). Plaintiff returned to the cabin of the truck after the loading process began but while loading was ongoing. (Surveillance Video timestamp 13:57:14–14:01:56, 14:04:40–14:22:38; Young Dep. 47:3-17; J. Mathis Dep. 60:21–61:11, 251:13–252:16; Porter Dep. 39:15-25).

As planned, sludge began to enter through a port at the bottom of the tanker. (LJC Dep. 119:15-18; Pl. Dep. 65:11-15). At some point during the loading, however, Hunter Farms employee Mitch Young ("Young") noticed a hissing sound.

5

(Young Dep. 48:18–49:9, 83:20–84:9; Video timestamp 14:36:40–14:37:20). He informed Plaintiff, who subsequently checked the vent line and found there was no air coming out, whereupon the pair determined that the tanker had become pressurized and Young turned off the loading pump. (Young Dep. 48:18–49:20; Surveillance Video timestamp 14:37:20–14:37:48). Plaintiff then may have told Young that he intended to loosen the trailer's manway lid to relieve the pressure from the tanker. (Young Dep. 50:11–51:1) ("I actually don't remember, but I guess he said he was going to loosen the lid"). Plaintiff climbed the side of the tanker towards the manway cover, and can be seen on video standing over the manway cover on top of the truck. (Young Dep. 35:23–36:8; Surveillance Video timestamp 14:38:05–14:38:38). The manway cover contains a warning sign not to open the cover when the tanker is pressurized; however, Plaintiff states that this sign was covered in dirt and debris. (Doc. No. 53-13 at 20–22). Ultimately the manway cover was blown off of the pressurized tanker and struck the Plaintiff, throwing him into the air and against a building before he landed on the ground. (Surveillance Video timestamp 14:38:05–14:38:38). Plaintiff suffered severe and permanent injuries as a result. (Doc. No. 53-2 at 55–56).

At a later deposition, LJC's corporate designee, Luke Mathis, stated that Plaintiff's actions on March 10, 2017 represented a violation of the company's SOP. (LJC Dep. 113:22–122:2, 134:3–135:24). The corporate representative stated that Plaintiff's actions led to the injury that day and that he "didn't do what he was supposed to do . . . ." (LJC Dep. 191:3–192:7, 313:7–14). The corporate

representative further elaborated that Plaintiff's actions that day were the predominant reason for his injuries, (Doc. No. 44-3 at 19), and that trying to release a manway cover on a pressurized tanker is "like walking out in front of a train." (Doc. No. 44-3 at 22).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.

7

Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

## III. DISCUSSION

### A. Plaintiffs' Claims Against Defendants

#### 1. Negligence and Gross Negligence

Plaintiff asserts claims of Negligence and Gross Negligence against Defendants. (Doc. No. 1 at 5). In order to make out a claim for negligence, a plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) and the breach was an actual and proximate cause of the plaintiff's injury. Shook v. Lynch & Howard, P.A., 563 S.E.2d 196, 197 (N.C. Ct. App. 2002). Generally, whether a plaintiff has established the requisite elements of negligence is a matter for the jury. Gibson v. Ussery, 675 S.E.2d 666, 668 (N.C. Ct. App. 2009). Summary judgment, therefore, is appropriate only if

8

there are no genuine issues of material fact and there is no evidence supporting one of the elements of negligence. Shook, 563 S.E.2d at 197.

Plaintiff has put forth sufficient evidence from which a reasonable jury could return a verdict for Plaintiff on his negligence claim. First, Plaintiff has put forward evidence that Defendant had a duty to provide the trailer in a good and working condition, (Doc. No. 15-1; Stanberry Dep. at 16–22), to inspect, service, and maintain any equipment provided to Plaintiff, (Stanberry Dep. at 33, 54–55), and to warn the Plaintiff of a dangerous or unsafe condition about which they knew or in the course of reasonable inspection should have known, (Porter Dep. at 26–29, 70–71; Jarvis Dep. at 133–144).[4] Second, Plaintiff has put forward evidence from which a reasonable jury could determine that Defendant breached one or more of these duties, including the PRV's failure to open at a sufficiently low pressure, (Sutton Report ¶ 7; Sutton Dep. 70:3-12, 75:1-13), and Defendant Terra's potential knowledge that the tanker could hold pressure along with Defendant's statement that the tanker would need to be "looked at," (Porter Dep. 28:9-18, 70:9-24), among other pieces of evidence.

There is no dispute between the parties that Plaintiff did indeed sustain injury based on the incident. Defendants argue, however, that Plaintiff has failed to show that any such breaches were the proximate cause of Plaintiff's injuries.

---

[4] Plaintiff also argues, in response to Defendants' Motion for Summary Judgment, that Defendants had a duty to train Plaintiff, (Doc. No. 53 at 21), and a duty to provide a place of employment that was free from hazards based on N.C. Gen. Stat. § 95-129 (1). (Doc. No. 53 at 21–22). However, Plaintiff failed to allege these proposed duties in the Complaint.

9

Specifically, they argue that there is no evidence that a fully-functioning PRV would have affected the outcome because there is no evidence that the Plaintiff would have avoided injury at 25 p.s.i., the pressure at which the PRV was shown to open. (Doc. No. 42 at 19). However, Plaintiff has presented evidence to the contrary. First, Plaintiff's expert opines that the PRV should have been set for a much lower pressure setting – specifically in the 3–4.4 p.s.i. range – rather than the PRV set to open between 7–21 p.s.i., much less the 25+ p.s.i. functioning opening pressure of the PRV in question. (Doc. No. 53-18). Moreover, Plaintiff's expert has conducted an analysis of the pressure level in the tanker on the day of the accident based on the height reached by the liquid exiting the tanker upon its release, and opined that the accident would not have occurred and Plaintiff likely would not have been injured if a properly-functioning PRV had been in use. (Doc. Nos. 53-11, 53-18). The evidence on this point "sets up a battle of the experts, which should not be resolved at summary judgment." <u>Reyazuddin v. Montgomery Cnty., Maryland</u>, 789 F.3d 407, 417 (4th Cir. 2015).

As a result, Plaintiff has put forward sufficient evidence based on which a reasonable jury could find that Defendants had a duty to Plaintiff which they breached, and that the breach in question proximately caused damages to the Plaintiff.

Defendant argues further, however, that even if Plaintiff has adequately presented a case for negligence, then Plaintiff's claim is barred by Plaintiff's own contributory negligence. "To prove a plaintiff's contributory negligence, the

defendant must demonstrate (1) that the plaintiff failed to act with due care and (2) such failure proximately caused the injury." Thorpe v. TJM Ocean Isle Partners LLC, 733 S.E.2d 185, 190 (N.C. Ct. App. 2012). In North Carolina, "a plaintiff's contributory negligence is a bar to recovery from a defendant who commits an act of ordinary negligence." Sorrells v. M.Y.B. Hospitality Ventures of Asheville, 332 N.C. 645, 648, 423 S.E.2d 72, 73–74 (1992). "Yet, a plaintiff's contributory negligence does not bar recovery from a defendant who is grossly negligent." McCauley v. Thomas ex rel. Progressive Universal Ins. Co., 242 N.C. App. 82, 89, 774 S.E.2d 421, 426 (2015). "Only gross contributory negligence by a plaintiff precludes recovery by the plaintiff from a defendant who was grossly negligent." McCauley, 242 N.C. App. at 89. Moreover, "[i]ssues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." Nicholson v. Am. Safety Util. Corp., 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997) (citing Lamm v. Bissette Realty, Inc., 327 N.C. 412, 418, 395 S.E.2d 112, 116 (1990)).

Defendants cite several ways in which Plaintiff was potentially negligent on the day of the incident: first, by opening the manway cover despite knowing that the tanker was pressurized, second, by violating the standard operating procedure by failing to monitor the vent hose during the loading process and failing to open the manway cover prior to loading, third, by failing to maintain three points of contact

11

with the tanker and remaining on the ladder, and fourth, by loosening the manway cover at all after the tanker was pressurized. (Doc. No. 42 at 14–16). Defendants also noted at oral argument that Plaintiff himself testified that it would have been unreasonable to open the manway cover. Plaintiff counters that, Defendants have not presented sufficient evidence that Plaintiff opened the pressurized manway in the first place, Doc. No. 53 at 19), and that even if he did open the manway, his actions were in keeping with the common practice in such situations, and he was responding reasonably to the dangerous sudden emergency caused by the pressurization of the tank. (Id.).[5]

Plaintiff has presented evidence that venting through the vent hose rather than through the top hatch was acceptable practice during loading. (Doc. No. 53-9 at 6). Plaintiff is also correct that whether Plaintiff intentionally opened the pressurized manway cover is a disputed fact; a reasonable jury could infer from testimony regarding Plaintiff's stated intent to do so and Plaintiff's subsequent climb and placement on top of the manway cover that he in fact opened the pressurized cover, but a reasonable jury could also decide based on Plaintiff's later testimony that he would never do such a thing, the lack of witnesses who actually

---

[5] Plaintiff also argues that the Last Clear Chance Doctrine applies to this situation. However, the facts in evidence show that between the time that the tanker became pressurized and the accident itself, Plaintiff was on the scene and Defendants were not; there is no evidence that Defendant's negligence "intervene[d] between [the] plaintiff's negligence and the injury" in order to become the direct and proximate cause. Outlaw v. Johnson, 190 N.C. App. 233, 238, 660 S.E.2d 550, 556 (2008) (quoting Scott v. Darden, 259 N.C. 167, 171, 130 S.E.2d 42, 45 (1963)). Therefore the doctrine does not apply to this case.

saw him do so, and the inconclusive video evidence as to Plaintiff's actions atop the tanker that perhaps the manway cover had blown open while Plaintiff examined it rather than because of Plaintiff's attempt to open it up.

Moreover, even if the jury determined that he did open the pressurized manway, it could still find that his actions were not negligent based on the Sudden Emergency Doctrine if it concluded that (1) an emergency situation existed requiring immediate action to avoid injury, and (2) that the emergency was not created by Plaintiff's own negligence. <u>Sobczak v. Vorholt</u>, 181 N.C. App. 629, 638, 640 S.E.2d 805, 812 (2007). Notwithstanding Defendant's argument that the tanker would have depressurized on its own, a jury could find that Plaintiff reasonably could have believed otherwise based on the tanker's pressurization and reasonably feared that the tanker posed an immediate danger to himself and others. As discussed above, the jury could also determine that Plaintiff had not improperly loaded the tank and was not responsible for its pressurization. At that point, the jury could also find that, based on that danger, Plaintiff behaved in a reasonable manner[6] given the emergency presented by attempting to quickly depressurize the tanker before it exploded.

At the summary judgment stage, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. Here, although Defendant has

---

[6] On this point, Plaintiff's deposition testimony that might be used to undermine his own position constitutes evidence to be offered at trial, rather than definitive proof on the question of contributory negligence.

produced evidence that Plaintiff's actions were not reasonable – potentially even under the circumstances – Plaintiff has created a dispute of fact on this issue that is more properly left to the jury.

Finally, Defendants move for summary judgment Plaintiff's gross negligence claim on the grounds that Plaintiff has not shown gross negligence and Plaintiff's own gross contributory negligence bars Plaintiff's claim. (Doc. No. 42 at 16). Contributory negligence does not bar plaintiff's recovery when the defendant's gross negligence, rather than ordinary negligence, is the cause of plaintiff's injury. Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. 2001). The North Carolina Supreme Court has "defined 'gross negligence' as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.'" Id. (quoting Bullins v. Schmidt, 369 S.E.2d 601, 603 (N.C. 1988)). It has also explained than "[a]n act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. (quoting Foster v. Hyman, 197 N.C. 189, 148 S.E. 36, 37–38 (N.C.1929)). A defendant's "act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others." Id. (emphasis omitted).

Plaintiff has presented evidence that Defendants were aware that the tanker had recently become pressurized but did not take action based on this knowledge. (Porter Dep. 28:9-18, 70:9-24). Plaintiff has also presented evidence that the tanker then became pressurized due to misfunctioning equipment while Plaintiff was loading it, and that Plaintiff was injured as a result. Viewed in the light most

14

favorable to Plaintiff, there is sufficient evidence from which a reasonable jury could conclude that Defendants were guilty of gross negligence, i.e., acting needlessly and with reckless disregard for the safety of others.  Furthermore, Defendant's argument regarding Plaintiff's gross contributory negligence fails at this stage for the same reason that its contributory negligence argument failed: the analysis involves a genuine dispute of material fact appropriate for jury determination.

Consequently, Defendants' Motion for Summary Judgment is denied as to Plaintiffs' claims for negligence, gross negligence, and willful and wanton conduct.

2. <u>Punitive Damages</u>

Plaintiff also asserts a claim for punitive damages against Defendants based on Defendants' grossly negligent or willful and wanton conduct.  (Doc. No. 1 at 14–15).  Defendants seek summary judgment on this claim.  Punitive damages may be awarded only if Plaintiff proves by clear and convincing evidence that Defendants are "liable for compensatory damages and that [fraud, malice, or willful or wanton conduct] was present and was related to the injury for which compensatory damages was awarded."  N.C. Gen. Stat. § 1D-15(a).  In this context, "willful or wanton conduct" is more than gross negligence, and North Carolina law defines such conduct as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm."  N.C. Gen. Stat. § 1D-5(7).  "Accordingly, willful or wanton conduct is 'more' than gross negligence in the sense that willful or wanton conduct requires, in addition to breach of a known

duty, an aggravating factor." Just. v. Greyhound Lines, Inc., No. 5:16-CV-132-FL, 2018 WL 1570804, at *4 (E.D.N.C. Mar. 30, 2018).

Defendants argue that in the light most favorable to the Plaintiff, the evidence only shows that Defendants were aware that the tanker could hold pressure and did not act on it, rather than the knowledge and intent required for punitive damages. (Doc. No. 42 at 24). Defendants point to case law stating that even failure to follow industry standards and failure to correct a known hazard does not arise to a level that would allow Plaintiff to seek punitive damages here. (Id.) (citing Collins v. St. George Physical Therapy, 141 N.C. App. 82, 88, 539 S.E.2d 356, 361 (2000); Butt v. Goforth Properties, Inc., 95 N.C. App. 615, 617–19, 383 S.E.2d 387, 388–89 (1989); Starkey v. Cimarron Apartments, Inc., 70 N.C. App. 772, 774–75, 321 S.E.2d 229, 231 (1984).[7] Plaintiff replies that Defendant had knowledge of the danger and control over the dangerous situation, and that several deponents expressed shock over Defendant's failure to inspect the tanker. (Doc. No. 53 at 25). Plaintiff also argues that the cases cited by Defendant did not involve the level of danger involved in this case. However, notably, Plaintiff does not cite any analogous cases of its own in which the Plaintiff was awarded punitive damages. (Doc. No. 53 at 24–25).

Here, while Plaintiff's claims for negligence and even gross negligence survive summary judgment, Plaintiff does not reach the even higher bar required to

---

[7] All three cases involve questions of punitive damages rather than of gross negligence.

state a claim for punitive damages. To this end <u>Butt</u> is instructive. There, Defendants' failure to secure a trailer before unhitching it from a truck resulted in physical injuries to Plaintiff and damage to her house after the trailer rolled into it. The Court found that the accident resulted from the use of defective equipment, deviation from customary industry safety practices, and poor training that resulted in safety violations that an affiant called "unconscionable;" yet these facts only pointed to extreme carelessness and poor judgment rather than the willful or wanton conduct, and therefore the Court denied jury consideration of punitive damages. <u>Butt</u>, 95 N.C. App. at 619, 383 S.E.2d at 389.

Similarly, in this case Plaintiff's factual allegations – if taken as true – would show that the tanker was defective, that Defendant was aware that the tanker could hold pressure, that Defendant failed to inspect the tanker, that Defendant failed to warn Plaintiff that the tanker might hold pressure, and that multiple people working in the same field expressed shock at Defendant's failure to inspect and maintain the tanker. This list demonstrates that Defendants may have been negligent, and possibly even grossly negligent, but it does not contain the additional aggravating factor required to show punitive damages. <u>Butt</u>, 95 N.C. App. at 619, 383 S.E.2d at 389; <u>see also</u> <u>Starkey v. Cimarron Apartments</u>, 70 N.C.App. 772 (1984), <u>disc. review denied</u>, 312 N.C. 798, 325 S.E.2d 633 (1985) (evidence that landlord knew apartment building lacked attic fire walls and failed to correct this condition was not sufficient to show willful or wanton conduct).

Defendant's motion for summary judgment will therefore be granted as to

Plaintiff's claim for punitive damages.

3. <u>Breach of Warranty</u>

Defendants argue that Plaintiff's breach of warranty claim fails because: (1) there was no sale (or lease) of tanker 11500 as defined by North Carolina's codification of the U.C.C.; (2) Plaintiff lacks privity with Defendants; and (3) Plaintiff's own negligent use of the tanker bars his claim. Plaintiff replies by conceding on this claim. (Doc. No. 53 at 26) ("Plaintiff concedes that the warranties granted under the lease agreement do not extend to the Plaintiff as an employee of LJC."). Plaintiff has therefore abandoned the breach of warranty claim. <u>See, e.g.</u>, <u>Chamberlain v. Securian Fin. Grp., Inc.</u>, 180 F.Supp.3d 381, 405 (W.D.N.C. 2016) (explaining that when a plaintiff, in response to a defendant's summary judgment motion, fails to respond to arguments regarding a claim, the claim can be dismissed due to abandonment); <u>Stricklin v. Stefani</u>, 358 F. Supp. 3d 516, 530 (W.D.N.C. 2018). As a result, summary judgment will be granted on Plaintiff's breach of warranty claim.

**B. Defendants' Claim against Third-Party Defendant**

Defendants have filed a Third-Party Complaint against Third-Party Defendant LJC, Plaintiff's employer, and seek summary judgment on this claim. (Doc. Nos. 43, 44). Defendants argue that LJC has admitte4d its own negligence by conceding at deposition that Plaintiff was contributorily negligent while acting

within the scope of his employment,[8] and as a result 1) LJC should lose its right to subrogation under the North Carolina Workers' Compensation Act, and 2) LJC's admissions trigger Defendant Terra's right to indemnification under the Agreement between LJC and Defendant Terra. (Doc. No. 44 at 1). LJC replies that contributory negligence is a question for the jury rather than being proven by LJC's deposition testimony, and that even if Plaintiff (and thereby Third-Party Defendant) is found contributorily negligent, then 1) Defendants would still not be entitled to a reduction of any judgment, and 2) Defendants are not entitled to contractual indemnification. (Doc. No. 49).

This Court has already found that summary judgment is not warranted on the question of Plaintiff's negligence, and that the issue will instead be determined at trial. Defendants' argument that LJC has conceded Plaintiff's negligence (and therefore its own) does not hold. The opinion of LJC's corporate representative on Plaintiff's actions might be *evidence* as to whether Plaintiff was behaving

---

[8] LJC's corporate representative stated at the deposition that Plaintiff should have opened the manway cover before beginning loading, should not have climbed on top of the tanker above the manway cover, and should not have tried to kick loose the manway cover when the tanker was under pressure. (Doc. No. 44-3 at 25). LJC's corporate representative further elaborated that Plaintiff would not have opened the manway cover when pressurized if he had read the warning, (Doc. No. 44-3 at 15); that Plaintiff was supposed to establish three points of contact on the ladder of the truck and to stand back in case of emergency, (Id.); that Plaintiff knowingly signed off on the SOP that obligated employee to maintain those three points of contact, (Doc. No. 44-3 at 18); that standing on top of the tanker is against the SOP, (Id.); that the biggest reason for the accident was that Plaintiff got on top of the trailer and started kicking the manway cover loose, (Doc. No. 44-3 at 19); and that trying to release a manway cover under pressure is "like walking out in front of a train." (Doc. No. 44-3 at 22).

negligently, but it is not definitive proof, and LJC's corporate representative cannot concede the contested fact of Plaintiff's own negligence.

The issues raised by Defendants' Third-Party Complaint will only apply here if both a) Plaintiff wins a verdict against Defendants, and b) the jury also finds that Plaintiff's own negligence contributed to his injuries. Summary judgment under these circumstances is "not a question ripe for review because it will arise, if at all, only if plaintiff receives a verdict in [his] favor" and even then only under particular circumstances. <u>Simmons v. C.W. Myers Trading Post, Inc.</u>, 307 N.C. 122, 123, 296 S.E.2d 294, 295 (1982) (declining to address whether plaintiff would be entitled to treble damages upon a verdict in her favor); <u>In re Wright</u>, 137 N.C.App. 104, 111–12, 527 S.E.2d 70, 75 (2000) ("The courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, deal with theoretical problems, give advisory opinions, provide for contingencies which may hereafter arise, or give abstract opinions.") (internal citation omitted). The Court will address this issue if, and only if, the circumstances that would render it applicable come to pass, and in the meantime will reserve ruling on Defendants' Motion for Summary Judgment against Third-Party Defendant LJC.

### C. Third-Party Defendant's Motion for Partial Summary Judgment

LJC seeks partial summary judgment on the Third-Party Complaint only to the extent that Defendant Darling seeks indemnification against LJC. Third-Party Defendant argues that there was no contractual relationship between LJC and Darling. (Doc. No. 48 at 3). Defendants concede this point, agreeing that Darling

20

was not a party to the Agreement and that Darling is therefore not entitled to indemnification, noting that their Motion for Summary Judgment seeks indemnification only as to Defendant Terra. Therefore LJC's motion for partial summary judgment is granted.

## D. Defendants' Motion to Trifurcate Trial

Defendants have moved to trifurcate trial into a liability phase, damages phase, and (if necessary) punitive damages phase. (Doc. No. 58). Plaintiff opposes the motion. (Doc. No. 60). Defendants' motion is based on Federal Rule 42(b), which provides: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Pursuant to the Federal Rules, the Court is given wide latitude to manage litigation before it, and the Court has broad discretion to decide whether to conduct separate trials. Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993); Bedser v. Horton Motor Lines, 122 F.2d 406, 407 (4th Cir. 1941). "The party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999).

Defendants argue that consideration of punitive damages should be separated from compensatory damages based on N.C. Gen. Stat. § 1D-30, and that separating the issues of liability and damages would avoid prejudice to the

21

Defendant while avoiding inefficiency because most witnesses will testify as to one topic and not the other. (Doc. No. 59). Plaintiff replies that Defendants' financial information is relevant to liability by highlighting Defendants' ability to implement a tanker maintenance program, that separating liability and damages would require a significant number of witnesses to testify twice, and that Plaintiff's very injuries are relevant to liability because they affect Plaintiff's memory and credibility. (Doc. No. 60).

The Court has carefully reviewed the record, Defendants' Motion, and the briefs in support of and opposing the Motion. Having done so, the Court finds that Defendants have failed to meet their burden for trifurcation. First, Defendants' strongest arguments on trifurcation related to the separation of punitive damages, yet the Court has now ruled in Defendants' favor on summary judgment on that issue, so the separation of punitive damages is no longer relevant. Second, with regard to separating liability from compensatory damages, the Court is not convinced that bifurcation of these two issues will promote greater convenience, serve judicial economy, or provide a procedural safeguard against undue prejudice, based especially on the potential requirement that several witness testify more than once and that as a result, if liability is found in Plaintiff's favor, the trial would last longer than it would have in a combined proceeding. The prejudicial effects that Defendants fear can be mitigated through other means at trial. Therefore, Defendants' Motion is denied as to its request for trifurcation.

22

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment as to Plaintiffs' Claims, (Doc. No. 41), is **GRANTED in part** and **DENIED in part**.  Specifically:

   a. The motion is **DENIED** as to Plaintiff's negligence and gross negligence claims;

   b. The motion is **GRANTED** as to Plaintiff's claim for punitive damages;

   c. The motion is **GRANTED** as to Plaintiff's claim for breach of warranty;

2. The Court will **RESERVE RULING** on Defendants' Motion for Summary Judgment against Third-Party Defendant LJC Environmental, LLC, (Doc. No. 43);

3. Third-Party Defendant LJC's Motion for Partial Summary Judgment, (Doc. No. 46), is **GRANTED**;

4. Defendants' Motion to Trifurcate Trial, (Doc. No. 58), is **DENIED**; and

5. The trial will take place in the Court's July civil term; a status conference to discuss the same will be scheduled promptly.

**SO ORDERED.**

Signed: June 14, 2021

Robert J. Conrad, Jr.
United States District Judge

23